UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JERRY BLEDSON, | ) |
| | ) |
| Movant, | ) |
| | ) NO. 2:20CR78-PPS |
| v. | ) (Associated Civil No. 2:22CV196-PPS) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

On August 17, 2020, Jerry Bledson entered a plea of guilty to a charge of extortion in violation of 18 U.S.C. §875(b). [DE 15, 2.] Bledson was sentenced on January 21, 2021 to a prison term of 84 months. [DE 33, 34.] A direct appeal was taken but was dismissed after Bledson's counsel filed an *Anders*[1] brief. [DE 36, 45.] Bledson has now filed a motion under 28 U.S.C. §2255 seeking to vacate, set aside or correct his sentence. [DE 46.] Bledson argues that his trial counsel rendered ineffective assistance in advising Bledson on pleading guilty because counsel failed to recognize that Bledson would be classified as a career offender for sentencing purposes. [DE 46-1 at 1.] Bledson also argues that he was wrongly categorized as a career offender under the United States Sentencing Guidelines.

Section 2255(a) authorizes a federal court to grant relief where a federal prisoner's sentence "was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law." The Seventh Circuit has observed that this is

---

[1] *Anders v. California*, 386 U.S. 738, 744 (1967).

a high bar: "Relief under §2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013)).

## Background

Jerry Bledson entered into an agreement to plead guilty to Count 1 of an information charging him with extortion in violation of 18 U.S.C. §875(b) and 2. [DE 2 at 4.] In exchange, the government would dismiss a previously pending indictment in Cause No. 2:18CR149, a charge of kidnapping in violation of 18 U.S.C. §1201(a)(1) and (2). [DE 2 at 5.] Bledson stipulated that on December 5, 2018, he had knowingly participated in a scheme with the intent to extort money and a thing of value from another person by using interstate commerce to transmit a threat to injure another person. [DE 2 at 6.] The scheme involved an attempt to scam money and marijuana from a man who'd fathered a child with Bledson's girlfriend, by faking the woman's kidnapping to get ransom money from the man. [DE 40 at 17, 21.]

At the time he entered his guilty plea on August 17, 2020, Bledson was aware that the statutory maximum penalty was a 20-year term of imprisonment. [DE 40 at 6.] When I asked Bledson if he had discussed with his attorney the application of the U.S. Sentencing Guidelines to his case, Bledson responded: "He wasn't sure because of my criminal history, so he wasn't sure how would he calculate it." [DE 40 at 7.] Bledson acknowledged that his attorney had "sat down with [him], [and] did his best to come up

2

with some estimates as to where [his] case might fall under the guidelines." [*Id*.] Bledson agreed to an appeal waiver as part of the plea agreement, with an exception for claims of ineffective assistance. [DE 40 at 10.]

I warned Bledson that "if the sentence does turn out to be more severe than you expect it to be, please understand that you'll still be bound by your plea and you'll have no right to withdraw it." [DE 40 at 13-14.] Bledson also acknowledged that no one had "made any promise to [him] at all as to precisely what [his] sentence will ultimately be." [DE 40 at 14.] Bledson was expressly warned: "[N]one of us really know exactly what your guideline range will be. Ultimately, the sentence that's imposed upon you, it could be higher than any estimate your lawyer may have given you. You understand that?" [DE 40 at 13.] Bledson acknowledged his understanding of this, as well as of the possibility that I would "disregard the guidelines" and impose "a sentence that's either more severe or less severe than what the guidelines actually call for." [*Id*.]

The sentencing hearing occurred before me on January 21, 2021. [DE 33.] Bledson had prior Illinois convictions for Unlawful Delivery of a Controlled Substance Within 1000 Feet of a Church in 2013, and for Unlawful Possession of a Controlled Substance with Intent to Deliver in 2015. [DE 25 at ¶¶37, 38.] These were treated as prior convictions for felony controlled substance offenses, triggering the application of the career offender provisions of the Sentencing Guidelines, which increased both the total offense level and the criminal history category. [DE 25 at ¶¶31, 41.] At the sentencing, Bledson's counsel candidly acknowledged that at the time of guilty plea, he did not realize that Bledson would qualify as a career offender under the Sentencing Guidelines, and that Bledson

3

agreed to the guilty plea "believing that he was going to fall within a certain sentencing guideline range" which did not turn out to be applicable. [DE 41 at 4-5.]

After I reviewed with counsel and the defendant what had happened at the change of plea, Bledson advised that he wanted to proceed with the sentencing after all. [DE 41 at 13.] Bledson told me that his counsel had advised he expected a guidelines range of 33 to 41 months if Bledson accepted the plea agreement that was offered. [DE 41 at 14.] And on that understanding, Bledson agreed to the guilty plea. [*Id*.] I pointed out that this was a "best estimate" but that Bledson had been advised at the plea hearing that the guidelines range could be higher than any estimate he'd received. [DE 41 at 14.] Bledson acknowledged both the advice at the time of the plea hearing and the circumstance that the estimate proved inaccurate. [*Id*.]

I offered Bledson the option of discharging his counsel and having a substitute attorney appointed to assist him in seeking to withdraw his guilty plea. [DE 41 at 15.] I made as plain as I could that such a choice by Bledson would not upset or inconvenience me, and I would not hold it against him, although I could not say whether the effort to withdraw the plea would be successful. [*Id*.] After this colloquy, Bledson chose to proceed with the sentencing that day, represented by the same counsel. [*Id*.] With the application of the career offender guidelines, Bledson scored a total offense level of 29, a criminal history category of VI, and a range of suggested incarceration of 151 to 188 months. [DE 41 at 25.] Making a substantial downward variance, I imposed a prison term of 84 months, to be followed by two years of supervised release. [DE 41 at 41.]

## **Career Offender Predicate Offense and the *Ruth* Decision**

Bledson argues that his prior Illinois conviction under 720 ILCS 570/401(c) for possession of a controlled substance with intent to deliver does not qualify as a career offender predicate under §4B1.2 of the U.S.S.G., in light of *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), a decision that preceded Bledson's sentencing by six months. [DE 46-1 at 1.] A generous construction of Bledson's motion is that he argues this issue as both a substantive error and as an ineffective assistance of counsel claim. The argument is a non-starter for several reasons.

First, as a claim of substantive error, the argument is precluded by Bledson's appeal waiver. The plea agreement contained Bledson's agreement that he "expressly waive [his] right to appeal or to contest [his] conviction and all components of [his] sentence or the manner in which [his] conviction or [his] sentence was determined or imposed, to any Court on any ground other than a claim of ineffective assistance of counsel." [DE 2 at 5.][2] Plea agreements are interpreted using ordinary principles of contract law and their unambiguous terms are given their plain meaning. *Plunkett v. Sproul*, 16 F.4th 248, 254 (7th Cir. 2021). An appeal waiver signed by a defendant is typically enforceable as voluntary and knowingly made. *Id*. at 255, citing *United States v. Galloway*, 917 F.3d 604, 606 (7th Cir. 2019). The plea transcript confirms Bledson's understanding of the right to appeal, and his knowing waiver of it except as to ineffective assistance claims, both on direct appeal and in collateral challenges before me. [DE 40 at 9-11.] In its disposition of Bledson's direct

---

[2] Bledson suggests that the inclusion of an ineffective assistance claim allows his §2255 motion to evade the waiver as to other claims as well. [DE 46-1 at 6; DE 53 at 5.] This is erroneous reasoning that would make waivers altogether ephemeral and subject to defeat by an empty pleading maneuver.

5

appeal, the Seventh Circuit also examined the change of plea proceedings, finding that "any argument about the voluntariness of the plea would be frivolous" and that Bledson's "appeal waiver would foreclose any challenge" to the sentence. [DE 45-1 at 2.] Bledson's argument that the career offender designation was wrongly applied is defeated by his waiver.

Even on the merits, though, Bledson's reliance on the *Ruth* decision is unavailing. *Ruth* considered two different potential impacts of a prior conviction for possession of a controlled substance with intent to distribute under 720 ILCS 570/401(c)(2). *Ruth*, 966 F.3d at 644. First, the court considered whether such a conviction qualified as a "felony drug offense" within the meaning of the sentencing enhancements provided in the controlled substance offenses of Title 21 U.S.C. subject to the filing of an information under 21 U.S.C. §851. *Id*. at 645-46. This is not the type of sentencing enhancement pertinent to Bledson's case. *Ruth* also considered whether the Illinois conviction was a "controlled substance offense" under the Sentencing Guidelines for career offender purposes – the same enhancement as applied in Bledson's case.

In view of the definition applicable to the career offender guideline in U.S.S.G. §4B1.1(a), the Seventh Circuit held that "[t]he career-offender guideline defines the term controlled substance offense broadly, and the definition is most plainly read to 'include state-law offenses related to controlled or counterfeit substances punishable by imprisonment for a term exceeding one year.'" *Ruth*, 966 F.3d at 654, quoting *Hudson*, 618 F.3d 700, 703 (7th Cir. 2010). So Bledson misreads *Ruth* when he argues that the decision establishes that his Illinois conviction does not qualify as a career offender predicate under

6

U.S.S.G. §4B1.2. Even if Bledson had not waived it (and he did), his argument based on *Ruth* is without merit both as a substantive argument and as an ineffective assistance claim, since counsel cannot be faulted for failing to raise a meritless argument.

Bledson's motion clearly relies on *Ruth* in support of his argument that his Illinois Unlawful Possession conviction does not qualify as a career offender predicate under the Guidelines. [DE 46-1 at 1, 2.] In his reply, after the government has effectively demonstrated that *Ruth* does not contain the holding Bledson contends, he changes tack and contends that he makes a different argument than was considered in *Ruth*. [DE 53 at 1.] The side-step is unsuccessful for at least two reasons. First, an argument cannot be made for the first time in reply. *O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) ("[W]e have repeatedly recognized that district courts are entitled to treat an argument raised for the first time in a reply brief as waived.") Second, any other argument challenging his career offender status is also barred by Bledson's appeal waiver.

### Ineffective Assistance – Erroneous Advice about Career Offender Status

Bledson also argues that his attorney's failure to advise him that he would be treated as a career offender under the Sentencing Guidelines – "erroneous information [that] was the deciding factor that lead him to plead guilty" – constitutes ineffective assistance of counsel that supports setting aside his conviction. [DE 46-1 at 1.]

The Sixth Amendment to the United States Constitution guarantees a criminal defendant a right to the effective assistance of counsel for his defense. *Burkhart v. United States*, 27 F.4th 1289, 1295 (7th Cir. 2022). In order to obtain relief for a violation of this right, a defendant must demonstrate that his counsel's performance "fell below an

7

objective standard of reasonableness" and that "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). If either of these prongs cannot be met, the claim fails, and I am not required to address both prongs if either is deficient. *Thompson v. Vanihel*, 998 F.3d 762, 767 (7th Cir. 2021).

"To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Yu Tian Li v. United States*, 648 F.3d 524, 527–28 (7th Cir. 2011). This deference must guide my analysis of counsel's performance on the first prong of the *Strickland* test. As to the second prong, prejudice to the defense requires a showing that "there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013).

To demonstrate prejudice in the context of his guilty plea, Bledson must show that, but for the misinformation about his career offender status and likely Guidelines sentencing range, he would not have pleaded guilty and would have insisted on going to trial. *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018); *see also United States v. Dowthard*, 948 F.3d 814, 817-18 (7th Cir. 2020), quoting *United States v. Williams*, 946 F.3d 968, 973 (7th Cir. 2020). But a convenient later claim that counsel's error made all the difference is insufficient alone: "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's

8

deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S.Ct. 1958, 1967 (2017). To make the required showing, the movant must present objective evidence that he would not have entered a guilty plea except for counsel's errors, and his own self-serving testimony that he would have insisted on going to trial is not enough. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). "[T]his court has repeatedly emphasized that a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice." *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009).

      The government argues that Bledson is unable to demonstrate any prejudice from counsel's error because "[a]t the sentencing hearing, counsel's failure to advise petitioner he might be deemed a career offender under the Guidelines was fully aired, and the Court cured any defects that may have been caused by the alleged transgression." [DE 48 at 5.] What the government refers to is the opportunity I offered Bledson to replace his counsel with a different attorney and thereafter file a motion to withdraw his guilty plea based on the misinformation he had relied on: "Now, if you are at all unhappy, dissatisfied with Mr. Maksimovich, I'll give you the opportunity to discharge him, and I can appoint you another lawyer and you can make an effort to attempt to withdraw from your plea agreement. I'm not telling you whether that's going to be a successful endeavor or not, but I would give you that opportunity." [DE 41 at 15.] Bledson declined the option to defer the sentencing and, with the assistance of a new attorney, challenge the guilty plea on the grounds of the erroneous advice he was given. [DE 41 at 15-16.]

9

Also weighing against Bledson are the repeated indications in the record of his change of plea and sentencing hearings that in deciding to plead guilty he was not counting on any particular sentencing range. *Bethel v. United States*, 458 F.3d 711, 719 (7th Cir. 2006) [citing the defendant's acknowledgments that he had not been promised anything else in exchange for his plea and understood that his sentence could be more severe than predicted]. Bledson told me at the guilty plea hearing that, although his attorney had done his best to estimate the Sentencing Guidelines range, he "wasn't sure" how to calculate it. [DE 40 at 7.] Bledson was warned that the sentence could be more severe than expected or predicted, and he acknowledged that he had received no promises as to precisely what his sentence would be. [DE 40 at 13-14.] Bledson was expressly warned: "[N]one of us really know exactly what your guideline range will be. Ultimately, the sentence that's imposed upon you, it could be higher than any estimate your lawyer may have given you. You understand that?" [DE 40 at 13.] Bledson acknowledged his understanding of this, as well as of the possibility that I would "disregard the guidelines" and impose "a sentence that's either more severe or less severe than what the guidelines actually call for." [*Id*.]

After reviewing the circumstances later at the sentencing hearing, including an erroneous sentencing estimate by counsel that Bledson had not acknowledged on the record at the time of his guilty plea, Bledson made the decision to proceed with sentencing on the basis of the guilty plea. He did so even after he was offered the option of a new attorney to challenge the plea agreement based on his counsel's error in assessing the Sentencing Guidelines application. [DE 41 at 15.] Considered alongside the record replete

10

with Bledson's acknowledgments that he had no assurance as to what his term of imprisonment would be, this decision by Bledson belies his claim that his reliance on counsel's sentencing estimate was critical to his guilty plea. In addition, a defendant fails to present any reason to believe that he would have persisted in a plea of not guilty where he "does not advance any reason why he believes he could have been acquitted at trial, or why it otherwise would have been worth the risk of losing the three-point reduction for acceptance of responsibility by proceeding to trial." *Sandoval v. United States*, Case No. 18-cr-40067, 2022 WL 2872759, *6 (C.D.Ill. July 21, 2022). For all these reasons, Bledson fails to establish prejudice under *Strickland* from the mistaken sentencing estimate he received from his counsel prior to his guilty plea.

## Conclusion

Jerry Bledson has failed to demonstrate a right to relief under §2255, and his motion to vacate will be denied. Because I find that Bledson has not made a substantial showing of the denial of a constitutional right, and that reasonable jurists could not debate the reasoning for rejecting his motion under §2255, I will also deny a certificate of appealability. 28 U.S.C. §2253(c)(2); *Welch v. United States*, 136 S.Ct. 1257, 1263 (2016). If Bledson wishes to appeal this Opinion and Order denying his §2255 motion, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure 22.

**ACCORDINGLY:**

Jerry Bledson's motion under 28 U.S.C. §2255 to vacate, set aside, or correct sentence [DE 46] is DENIED, and a motion for certificate of appealability is also DENIED.

11

The Clerk shall enter judgment against Bledson and in favor of the United States.

**SO ORDERED**.

ENTERED: November 1, 2022.

                                 /s/ Philip P. Simon
                              PHILIP P. SIMON, JUDGE
                            UNITED STATES DISTRICT COURT